UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Michael Stone,

Plaintiff

v.

New Prime, Inc., et al.,

Defendants

Case No. 2:22-cv-00480-CDS-EJY

**Order Denying Plaintiff's Amended Motion in Limine, Striking Plaintiff's Duplicate Motion in Limine, and Granting in Part, Denying in Part, and Deferring in Part Defendants' Motion in Limine**

[ECF Nos. 99, 100, 101]

This is a car accident negligence action brought by plaintiff Michael Stone against defendants New Prime, Inc., and Guillermo Peguero, which is set to commence trial on September 21, 2026. *See* Sec. am. compl., ECF No. 32; Order regarding trial, ECF No. 98. As set forth in the parties' joint pretrial order, the outstanding issues of fact to be resolved at trial are whether the defendants breached a duty of care, if the defendants' conduct was the proximate cause of Stone's alleged injuries, the reasonable amount of medical expenses, and past and future pain and suffering that resulted from the alleged injuries. *See* ECF No. 97 at 2–3. Both parties filed motions in limine. ECF Nos. 99, 100, 101.[1] These motions are fully briefed. Defs.' resp., ECF No. 102; Pl.'s resp., ECF No. 107. For the reasons set forth herein, the plaintiff's motions are denied, and defendants' motion is granted in part, denied in part, and deferred in part.

## I. Legal standard

Motions in limine are a well-recognized judicial practice authorized under case law. *See Ohler v. United States*, 529 U.S. 753, 758 (2000). The court's power to rule on motions in limine stems from "the court's inherent [power] to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Trial courts have broad discretion when ruling on such motions. *See Sweeney v. Chang*, 2019 WL 1431583, at *2 (C.D. Cal. Mar. 26, 2019) (citing *Jenkins v. Chrysler Motors*

[1] Plaintiff filed an amended version of his motion at ECF No. 101. Accordingly, I strike ECF No. 99 and only address ECF No. 101 herein.

*Corp.*, 316 F.3d 663, 664 (7th Cir. 2002)). Regardless of the court's initial decision on a motion in limine, any issues can be revised during trial. *See* Fed. R. Evid. 103 advisory committee's note to 2000 amendment ("Even where the court's ruling is definitive, nothing in the amendment prohibits the court from revisiting its decision when the evidence is to be offered."); *Luce*, 469 U.S. at 41–42 ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling."). "The Supreme Court has recognized that a ruling on a motion in limine is essentially a preliminary opinion that falls entirely within the discretion of the district court." *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999) (citing *Luce*, 469 U.S. at 41–42).

## II. Discussion

### A. Plaintiff's amended motion is denied.

Stone's motion is denied for violating several rules of the court. First, this court's Chambers Practice requires that the parties meet and confer before filing motions in limine. *See* Chambers Practices at 6.[2] As set forth in the defendants' response to plaintiff's motion, Stone filed his motion before giving them an opportunity to respond.[3] *See* Resp., ECF No. 102 at 3. This is unacceptable and results in a waste of resources. As explained by another judge in this district, "[t]he meet and confer requirement is more than a formalistic prerequisite, and the parties must treat the process as a means to substitute judicial resolution." *Mendoza v.*

[2] Individual-Practice-Rules-of-Judge-Cristina-D.-Silva-09-2022.pdf

[3] The meet-and-confer requirement "may only be satisfied through direct dialogue and discussion in a face-to-face meeting, telephone conference, or video conference. The exchange of written, electronic, or voice-mail communications does not satisfy this requirement." LR IA 1-3(f) (defining "meet and confer"). Judges in this district have held that this rule requires the movant to "personally engage in two-way communication with the nonresponding party to meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention." *Shuffle Master v. Progressive Games*, 170 F.R.D. 166, 171 (D. Nev. 1996). The purpose behind this obligation is to "promote a frank exchange between counsel to resolve issues by agreement or to at least narrow and focus matters in controversy before judicial resolution is sought." *Nevada Power Co. v. Monsanto Power Co.*, 151 F.R.D. 118, 120 (D. Nev. 1993). To meet this obligation, parties must "treat the informal negotiation process as a substitute for, and not simply a formalistic prerequisite to, judicial resolution of discovery disputes." *Id.* This is done when the parties "present to each other the merits of their respective positions with the same candor, specificity, and support during the informal negotiations as during the briefing of discovery motions." *Id.* The record demonstrates that the plaintiff failed to comply with this obligation.

*Amalgamated Transit Union Int'l*, 2019 WL 9100188, at *5 (D. Nev. June 24, 2019) (citations omitted). This is why failure to comply with the meet and confer requirement can result in denial of the motion. *See* LR IA 1-2(f)(14); *see also* LR IC 7-1 (providing that the "court may strike documents that do not comply with [the Local] rules."). There is no doubt Stone did not comply with the meet and confer rule because the defendants agree to 9 of Stone's 41 motions.[4] *See* ECF No. 102 at 3–4.

Stone also violates Federal Rule of Civil Procedure 11(a) because his motion is unsigned. Indeed, that rule requires every motion to be signed by at least one attorney of record. Fed. R. Civ. P. 11(a). But here, both the original motion (ECF No. 99) and the amended motion (ECF No. 101) are unsigned.

Finally, Stone egregiously violates this court's rule of filing a maximum of 10 motions in limine. *See* Chambers Practices at 6. Stone filed 41 motions. And of those 41 motions, not a single one cites any points and authorities supporting the relief he seeks. *See* ECF No. 101. This is a violation of Local Rule 7-2, which requires every motion to be supported by points and authorities and states that the failure to do so constitutes consent to denial of the motion. LR 7-2(a), (d). Consequently, Stone's amend motion in limine is denied.

**B. Defendants' motion in limine is granted in part, denied in part, and deferred in part.**

The defendants move to exclude evidence. In his opposition, Stone asserts that he does not oppose motions in limine nos. 4, 5, 9, and 10. *See* ECF No. 107 at 3. Accordingly, those motions are granted.

[4] The defendants do not oppose the plaintiff's motions in limine 4, 8–9, 11–13, 22, 31, and 35. ECF No. 102 at 3.

### *1. Motion in limine no. 1: seeking to exclude records or evidence that was not properly disclosed is deferred.*

The defendants argue that the court should exclude any records or discovery not properly disclosed. *See* ECF No. 100 at 6. They contend that, as the parties were preparing the joint pretrial order, Stone disclosed an additional 1,500 pages of medical records that had not been previously produced. *Id.*

"If a party fails to provide information . . . as required by Rule 26(a), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740 (9th Cir. 2021) ("[A] district court may properly impose an exclusion sanction where a noncompliant party has failed to show that the discovery violation was either substantially justified or harmless." (citing *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106–07 (9th Cir. 2001))).

Stone does not dispute that the disclosures were untimely, nor does he proffer any information or argument to suggest the late disclosure was substantially justified. Rather, he asserts that his conduct neither constituted bad faith nor some other nefarious conduct, and that the defendants were not prejudiced by the tardy disclosure because trial was not set for another six months, so even if there were any prejudice, it has been "cured." ECF No. 107 at 5. This court is left to determine if the tardy disclosure was, in fact, harmless. The proposed joint pretrial order was filed on December 12, 2025. *See* ECF No. 94. The defendants filed their motion in limine in March 2026. ECF No. 100. Four years after this case was initiated, these records *still* had not been produced. *Id.* Despite Stone's egregious omission, the court lacks information to make a ruling. Accordingly, I defer doing so until I can hear arguments from the parties regarding any harm to the defendants at calendar call.

### *2. Motion in limine no 2: seeking to exclude evidence of damages not properly disclosed is deferred.*

The defendants contend that the court should exclude evidence of damages here because Stone has not provided calculation of damages and exclude evidence of any medical special damages that have not yet been produced.[5] ECF No. 100 at 7–9. In opposition, Stone contends that he provided an early estimate of damages, later timely disclosed specific calculations through three expert witness disclosures, and then finally provided supplemental disclosure as to damages. *See* ECF No. 107 at 5–6. Stone further argues, relying on his response to motion in limine no. 1, that there has been no prejudice to the defendants, and even if there was some prejudice, it has been "cured." *Id.* at 6.

It is axiomatic that "one of the most basic propositions of law . . . [is] that the plaintiff bears the burden of proving his case, including the amount of damages." *Faria v. M/V Louise V*, 945 F.2d 1142, 1143 (9th Cir. 1991). This is consistent with the purpose behind Rule 26(a)(1)(A)(iii), which requires the disclosure of "a computation of each category of damages claimed by the disclosing party." Fed. R. Civ. P. 26(a)(1)(A)(iii). Relatedly, Rule 26(e)(1)(A) requires disclosing parties to supplement their prior disclosures "in a timely manner" when the prior response is "incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). The remedy for not complying with disclosure requirements is set forth in Fed. R. Civ. P. 37(c)(1), which prohibits the use at trial of any information that is not properly disclosed. However, exclusion is not appropriate if the failure to disclose was substantially justified or harmless. *Yeti by Molly*, 259 F.3d at 1106.

At this juncture, the court lacks sufficient information to rule on this motion. Stone offers no information suggesting the untimely disclosures were substantially justified, so I again must determine if the untimeliness is harmless. I need more information to do so, so I defer

[5] The defendants contend that the plaintiff should be precluded from asking for any medical special damages above $335,147.01.

ruling until calendar call where I can hear additional arguments regarding the scope and timing of Stone's disclosures, as well as any alleged harm to the defendants.

### *3. Motion in limine no. 3: seeking to exclude evidence and/or testimony of plaintiff's diabetes was causally related to the car accident is granted.*

The defendants seek to exclude testimony from proposed expert witness, Dr. Christopher Sellars, that Stone's "Type 2 diabetes mellitus was attributed to the subject accident," noting that no other medical provider has come to that conclusion. *See* ECF No. 100 at 10 (citing Defs.' Ex. E, ECF No. 100-5 at 22). As set forth in Sellars's report, Stone reported that he was diagnosed with diabetes *after* taking steroids for the subject incident. *Id.*; *see also* Sellars's deposition, Defs.' Ex. F, ECF No. 100-6at 6–7 (Sellars explaining during his deposition that injuries in a diabetic patient tend to have a high risk of decreased healing capacity). But the defendants also note that Stone was prescribed steroids for pain and gout *before* the car accident at issue here, in both July 2018 and January 2019, which isn't addressed by Dr. Sellars. ECF No. 100 at 10.[6]

In opposition, Stone cites Dr. Sellars's specific deposition testimony which, in response to the question if he was attributing Stone's Type 2 diabetes to the May 22, 2021 accident, he stated

> So Mr. Stone had reported to me that he was diagnosed with the diabetes since taking steroids for—from his treating doctors that was prescribed. And it's well established in the literature that diabetes can be steroid-induced. Additionally, due to pain, different hormones can raise levels of blood sugars and create insulin resistance, and all of that is in medical literature. But I also pointed that out because it's essential for healing, right? So injuries in a diabetic patient tend to have a high risk of decreased healing capacity because of changes in blood flow and getting the essential nutrients due to the high blood sugars. So that's basically the—my opinion based on that.

ECF No. 107 at 8 (citing Pl.'s Ex 4, ECF No. 107-4 at 6–7) (cleaned up). Stone then summarily contends that Dr. Sellars is qualified to opine in this matter and that evidence of the causal

---

[6] The defendants do not cite any record to show Stone was previously prescribed steroids.

relationship between Stone's "post-accident" steroid use and diabetes should not be excluded. ECF No. 107 at 8. Stone's argument is flawed.

The scope of Dr. Sellars's qualifications and what he would actually opine to is wholly unclear from the above-cited deposition testimony. This testimony could be interpreted in a number of ways. For example, it could be construed as opining steroids cause diabetes and perhaps, albeit unclear, that is what happened to Stone. It could also be construed that Stone had delayed healing because he suffered from diabetes. It could be both of the prior sentences. Or it could be that the "that" Dr. Sellars's opinion is based on is that Stone has or had insulin resistance. Stated otherwise, at best, his testimony is ambiguous and Stone fails to offer any explanation or authority to clarify the scope or qualifications of any opinion testimony, much less demonstrating how it would be admissible. Finally, and fatal to Stone's opposition, is that it lacks an explanation as to how *post*-accident steroid use is relevant to the questions of fact at issue here. ECF No. 107 at 8 ("[E]vidence regarding the causal relationship between Plaintiff's post-incident steroid use and diabetes should not be excluded."). Stated otherwise, Stone fails to establish that Sellars can testify to a causal connection between Stone's *post-accident* steroid use[7] and to the accident at issue here. *See Longoria v. Kodiak Concepts LLC*, 2021 WL 1100373, at *11 (D. Ariz. Mar. 23, 2021) ("The proponent of expert testimony need only lay a 'minimal foundation' of 'knowledge, skill, experience, training, or education' in the topic at hand.") (citation omitted). Consequently, the defendants' motion in limine no. 3 is granted.

[7] *See also* ECF No. 100-5 at 26 (Stone's Life Care Plan identifying his Type II diabetes as an injury *after* injuries sustained from the accident).

***4. Motion in limine nos. 6 and 7: seeking to exclude plaintiff's expert witness Walter Guntharp and Stan Smith are granted in part as to Guntharp and deferred as to Smith.***

The defendants move to exclude two of the plaintiff's expert witnesses. *See* ECF No. 100 at 13–18. The admissibility of expert testimony is governed by Federal Rule of Evidence (FRE) 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Expert testimony must rest on a reliable foundation and be relevant to the task at hand. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010). To determine the reliability of the principles and methods used, the court looks to: (1) whether a theory or technique can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential rate of error; (4) whether there are standards controlling the technique's operation; and (5) whether the theory or technique has general acceptance within the relevant scientific community. *Daubert*, 509 U.S. at 592–94. "These factors are meant to be helpful, not definitive, and the trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the particular case." *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 814 (9th Cir. 2014) (citation omitted). Thus, it is not the court's task to decide whether the expert is right or wrong, but to ensure the proposed opinions satisfies Rule 702. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969–70

(9th Cir. 2013). If the proponent does not meet its Rule 702 burden, the expert testimony is not admissible. *See Davis v. McKesson Corp.*, 2019 WL 3532179, at *3 n.2 (D. Ariz. Aug. 2, 2019).

The defendants seek to exclude the testimony of trucking standards expert Walter Guntharp because Stone's claim for negligent entrustment, negligent hiring, training, and supervision, and negligent maintenance was dismissed at summary judgment, rendering any testimony from Guntharp irrelevant. ECF No. 100 at 13–15. They also seek to exclude the testimony of Stan Smith, Ph.D., an economist who purportedly evaluated Stone's past and future economic losses because of the car accident. *See id.* at 16–19.

In opposition to the defendant's motion to exclude Guntharp, Stone contends that the defendants offer no "meaningful challenge" to Guntharp's qualifications and further assert that he is qualified to give three specific opinions. ECF No. 107 at 10. As to Stan Smith, Stone contends that Smith will assist the jury in determining damages, and that Smith is qualified, that his calculation regarding the reduction in value of life is reliable, and that his methodology is both widely accepted and meets the *Daubert* standard. *See id.* at 11–16.

Guntharp's opinions one and three are relevant to question of fact here, namely if the defendants[8] were negligent. However, his second opinion—whether Peguero failed to compensate for his trailer—would be irrelevant as there is no dispute Peguero struck Stone's parked vehicle. Further, Guntharp cannot provide testimony as to why Peguero struck Stone's parked vehicle when his testimony is based solely on his review of some reports,[9] without having conducted any of his own analysis, because that would be hearsay. Accordingly, the defendants' motion in limine to exclude Guntharp is granted in part and denied in part. Assuming he can be properly qualified at trial, Guntharp can testify as to opinions 1 and 3, but not opinion 2. *See* ECF No. 100 at 15; ECF No. 107 at 10.

---

[8] Depending on the scope of the testimony, it might only be relevant as to defendant Peguero because they address Peguero's experience (or inexperience) as a driver and his alleged failures as a driver. *See* ECF No. 107 at 10.

[9] The defendants specifically argue that this opinion was reached based solely on Guntharp's review of reports, *see* ECF No. 100 at 15, and Stone did not dispute this argument in his opposition to the motion.

As to Smith, because the court must first resolve the defendant's motion regarding the admissibility of damages, I cannot rule on the motion in limine seeking to exclude Smith's testimony, so I defer ruling on this motion until I resolve the defendants' motion in limine no. 2.

### *5. Motion in limine no. 8: seeking to exclude Dr. Christopher Sellars "Life Care Plan" opinions is granted.*

The defendants move to exclude the testimony of Dr. Christopher Sellars, Stone's proffered Life Care Plan expert, arguing that his testimony does not meet the *Daubert* standard, and that he is not qualified to opine on Stone's alleged need for treatment by a neurosurgeon, psychiatrist, and/or psychologist, nor that Stone would require almost $900,000 in future medical treatment when, per discovery, Stone stopped receiving treatment for his injuries in or around October 2023. *See* ECF No. 100 at 19–21. In response, Stone avers that cross-examination, not a motion in limine, is the proper mechanism for challenging Dr. Sellars's recommendations. ECF No. 107 at 16. Stone further argues that Dr. Sellars is "uniquely qualified" to render his opinions in this case and that his opinions are reliable. *Id.* at 16–19.

The defendants do not challenge Dr. Sellars's overall qualifications. Rather, they challenge the details of Stone's proposed Life Care Plan, asserting that it is not based on "particularized facts," and that his future treatment recommendations are not supported by Stone's medical records. ECF No. 100 at 20. Stated otherwise, they challenge Dr. Sellars's conclusions as unreliable. In response, Stone summarily contends that Dr. Sellars's methodology is peer-reviewed and accepted in the scientific community, and further that his methodology is "widely accepted by the court as reliable." ECF No. 107 at 18.

Reliability analysis focuses on the "principles and methodology" of the expert, "not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. "[C]onclusions and methodology are not entirely distinct from one another" and nothing "requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Here, Stone fails to cite a single case supporting his

conclusion that Dr. Sellars's methodology is reliable. Indeed, Stone's opposition fails to explain how Dr. Sellars reached many of his opinions or his recommendations. For example, Dr. Sellars concludes, without explanation, that Stone will need a host of future medical treatment and care, including an additional cervical fusion, plasma and cortisone shoulder injections and eventual shoulder surgery, pain management, treatment with a neurosurgeon, psychiatrist, and psychologist, as well as additional diagnostic studies, and medication, with no explanation as to how or why these will be needed. *See* ECF No. 100-5 at 37–41. Instead, the Life Care Plan just states Dr. Sellars "formulated Mr. Stone's future medical requirements based upon [his] education, training and professional experience as a practicing physician, Board Certified Physical Medicine & Rehabilitation Specialist and Certified Sports Medicine Specialist," *id.* at 37, with no discussion of why these specific treatments or medications, or frequency thereof, are needed. This sort of explanation is critical given the lack of such treatment recommendations in Stone's treating physician's records.

Further, the Life Care Plan itself acknowledges that Stone was not interviewed in person nor examined before the plan was issued. *Id.* at 10. How can a doctor make significant and costly[10] recommendations regarding future medical treatment without ever examining the patient? Perhaps a greater analysis and explanation would help provide an answer to the defendants and the court, but its absence is insufficient to satisfy *Daubert*. Rather, it is the equivalent of "because I am a doctor."

In sum, the Life Care Plan lacks sufficient explanation regarding Dr. Sellars's methodology in reaching his treatment recommendations or why his recommendations far exceed those of the doctors who actually treated Stone. Thus, Dr. Sellars's opinions are unreliable and excluded. *See Deramus v. Saia Motor Freight Line, LLC*, 2009 WL 1664084, at *2 (M.D. Ala. June 15, 2009) (permitting life care planner testimony where life care Planner "testified that

---

[10] The Life Care Plan does include robust citations to how the cost calculations were reached. *See* ECF No. 100-5 at 48–163.

her proposed life care plan was based on a review of Plaintiff's medical records, depositions taken from Plaintiff's physicians, and numerous meetings with Plaintiff" and finding "any objection to [the] opinions must go to the weight the jury should give to her testimony rather than its admissibility"); *Wadsworth v. Walmart, Inc.*. 2025 WL 608076 (D. Wyo. Feb. 24, 2025) (excluding Life Plan were the plaintiff failed to cite to any portion of the expert's report showing the methodology he used to support his opinions; failed to identify any recommendations from the plaintiff's treating physicians regarding future care needs or any restrictions relating to the plaintiff's physical activities; failed to identify any medical records which contain recommended follow-up care or activity restrictions, amongst other omissions); *see also General Electric*, 522 U.S. at 146 ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

## III. Conclusion

IT IS THEREFORE ORDERED that the plaintiff's **motion in limine [ECF No. 99] is STRICKEN as duplicative** and the plaintiff's amended motion in limine **[ECF No. 101] is DENIED.**

IT IS FURTHER ORDERED that the defendants' motion in limine **[ECF No. 100] is granted in part, denied in part, and deferred in part.** The motions are resolved as follows:

Motion in limine no. 1 is DEFERRED.

Motion in limine no. 2 is DEFERRED.

Motion in limine no. 3 is GRANTED.

Motion in limine no. 4 is GRANTED AS UNOPPOSED.

Motion in limine no. 5 is GRANTED AS UNOPPOSED.

Motion in limine no. 6 is GRANTED IN PART as set forth in this order.

Motion in limine no. 7 is DEFERRED.

Motion in limine no. 8 is GRANTED.

Motion in limine no. 9 is GRANTED AS UNOPPOSED.

Motion in limine no. 10 is GRANTED AS UNOPPOSED.

Dated: August 19, 2026

_______________________________
Cristina D. Silva
United States District Judge